COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

July 31, 2015

Jennifer L. Dering, Esquire
Archer & Greiner, P.C.
300 Delaware Avenue, Suite 1370
Wilmington, DE  19801

Christopher Viceconte, Esquire
Gibbons P.C.
1000 N. West Street, Suite 1200
Wilmington, DE  19801

Re:  *Ross Holding and Management Company v.*
*Advance Realty Group, LLC*
C.A. No. 4113-VCN
Date Submitted:  April 16, 2015

Dear Counsel:

At the conclusion of its post-trial memorandum opinion, the Court, perhaps out of an excessive abundance of caution, invited briefing on two issues: "first, whether Plaintiffs were harmed by the Board's layering of FARS's and ARD's loans on top of their units and, second, the question of attorneys' fees and expenses."[1]

---

[1] *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC* ("*Ross II*"), 2014 WL 4374261, at *39 (Del. Ch. Sept. 4, 2014).  The Court presumes familiarity with *Ross II*.

* * *

*The "Layering"*

The Court expressed concern about preferential loans that may have benefited FARS and ACP as part of the Reorganization. The Court speculated that the "most sensible remedy may be to unwind these preferential loans and set Plaintiffs, FARS, and ACP shoulder-to-shoulder in ARG."[2] The Court also recognized that such an effort might not accomplish anything because the interests are (and are likely to remain) without value.

The Plaintiffs responded by seeking an order to require the Defendants to disgorge $5 million (or Plaintiffs' proportionate share) in cash from interest payments made on the contested loans.[3] Such damages would go "directly to Plaintiffs and not to ARG."[4] Their focus seems to be on finding a way to provide a meaningful remedy, that is, something of value. That would be more appealing

---

[2] *Id.* at *35.

[3] Plaintiffs used $5 million in their brief, but the precise amount is not critical here. Plaintiffs held 11.52 percent of ARG's units after the reorganization; they state that their proportionate share of that $5 million would be $576,000. Pls.' Post-Trial Supplemental Mem. of Law. ("Pls.' Mem.") 12.

[4] *Id.* at 12 n.3.

than unwinding preferential loan arrangements which seemingly would merely reallocate worthless obligations. They turn their attention to the interest paid because of their perspective that there was a wrongful extraction of funds from ARG and that it is a remedy that would carry the possibility of some benefit for them.

In contrast, the Defendants reiterate that the Reorganization nominally benefited the Plaintiffs and, thus, no relief is warranted. Despite that assertion, they have offered reassignment of $1,952,400 of FARS and ACP's senior debt to Plaintiffs to resolve the dispute. That assignment "would give Plaintiffs $25 of senior debt for each unit of equity, a deal tantamount to that given to FARS and putting Plaintiffs shoulder-to-shoulder with FARS and ACP."[5]

The decline in the real estate market imposed a harsh price on the parties. The Reorganization, however, occurred shortly before the effects were felt.

---

[5] Defs.' Supplemental Post-Trial Mem. Addressing Whether Pls. Were Harmed By Board's Layering of FARS's and ARD's Loans on Top of Their Units and Question of Att'ys' Fees and Expenses 3. Perhaps it should be noted that the Defendants do not oppose Plaintiffs retaining their equity. *Id.* at 8 n.2.

Whether the real estate professionals on both sides recognized the impending deterioration is uncertain.

If the Reorganization caused actual damage to the Plaintiffs, they would be entitled to recover damages measured as of the time of the Reorganization, even if their interests would have become worthless not long thereafter. The proper comparison in this context is between the impact of the Reorganization and what would have happened if the Reorganization had not occurred. It does not involve assessment of hypothetical restructuring that the Court might prefer. Under either capital structure—before the Reorganization or after the Reorganization—there were entitlements, including those of certain Defendants, to the $5 million in interest payments that came ahead of the Plaintiffs. With or without the Reorganization, the Plaintiffs would not have shared in the $5 million. Thus, they cannot point to any damages actually suffered because of the interest payments.

Nevertheless, Defendants have offered to place Plaintiffs "shoulder-to-shoulder" with FARS and ACP with respect to certain loans involving ARG. That is an opportunity that Plaintiffs should be able to pursue, if they so choose, and the Court is prepared to include their preference in the implementing order.

\* \* \*

*Attorneys' Fees*

On the question of fees, Defendants argue at the outset that Plaintiffs can no longer ask for fees because of law of the case, waiver, and judicial estoppel. The Amended Verified Complaint, in its Demand for Relief, asked for "[a]ttorneys' fees and costs," among other remedies.[6] Defendants later moved for summary judgment on "the Plaintiffs' claims for attorneys' fees and costs because [Plaintiffs] have not demonstrated any basis for fee shifting."[7] In their opposition brief, Plaintiffs stated, "Defendants have moved for summary judgment as to discrete parts of Plaintiffs' Amended Complaint, including the demand for attorneys' fees in their *ad damnum* clause and their prayer for punitive damages. Plaintiffs concede both."[8] The Court subsequently dismissed the fees claims for

---

[6] Am. Verified Compl. 58.

[7] *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC* ("*Ross I*"), 2013 WL 764688, at \*1 (Del. Ch. Feb. 28, 2013, *as revised*, Mar. 7, 2013).

[8] Br. in Opp'n to Defs.' Mot. for Partial Summ. J. 5.

lack of opposition.[9]  In the pre-trial stipulation, Plaintiffs asked for costs (but not fees).[10]

Plaintiffs do not deny waiver of a "statutory" claim for attorneys' fees.[11] Rather, they argue that the Court remains able to "exercise its equitable power . . . to either award Plaintiffs their attorneys' fees or compensatory damages in an amount that takes into account Plaintiffs' attorneys' fees."[12]  Under the American Rule, "litigants in Delaware are generally responsible for paying their own counsel fees."[13]  Yet Plaintiffs cite cases such as *SIGA Technologies, Inc. v. PharmAthene, Inc.*[14] and *Cantor Fitzgerald, L.P. v. Cantor*[15] to emphasize that—regardless of their earlier concession—the Court can award attorneys' fees through its power to fashion an equitable remedy or as an approximation of damages.

---

[9] *Ross I*, 2013 WL 764688, at *1, *6.

[10] Revised Pre-Trial Stipulation and Order § IV.

[11] Pls.' Mem. 9.

[12] Pls.' Post-Trial Reply Supplemental Mem. of Law 7 n.2.

[13] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 686 (Del. 2013).

[14] 67 A.3d 330, 352 n.109 (Del. 2013) ("[W]e note [that] the Court of Chancery's power to award attorneys' fees in an appropriate case stems not from the statutory power to award costs embodied in 10 *Del. C.* § 5106, but rather from [its] inherent equitable authority.").

[15] 2001 WL 536911, at *3 (Del. Ch. May 11, 2001).

Although Defendants may have violated their duty of loyalty, engaging in conduct that Delaware law discourages, Plaintiffs failed (without any effort to limit the scope of the options they were abandoning) to attempt to preserve a basis to pursue attorneys' fees. Especially with a "nominally benefi[cial]"[16] or accretive transaction, the Court is not inclined to search out a way to circumvent the Plaintiffs' decision and commitment to forego attorneys' fees.[17] Thus, the Court declines to award attorneys' fees and expenses.

* * *

Counsel are requested to submit an implementing form of order.[18]

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Tammy L. Mercer, Esquire
       Register in Chancery-K

---

[16] *Ross II*, 2014 WL 4374261, *39.

[17] Moreover, the Court is not convinced that the circumstances and consequences at work here cry out for an effort to fashion some sort of equitable damages remedy.

[18] The Court does not understand its decision to interfere with any of the concerns expressed by the Intervenors. Letter from Tammy L. Mercer, Esq., Nov. 20, 2014. The remedy for the "layering" does not directly affect ARG.